UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRITTANY DELP, as Next Friend for L.B., a minor, and PRECIOUS GONZALEZ-ALLEN, as Next Friend for J.H., a minor,

Plaintiffs,

Case No. 2:24-cv-12755
District Judge Denise Page Hood
Magistrate Judge Anthony P. Patti

v

MONROE COUNTY INTERMEDIATE SCHOOL DISTRICT, HAILEY MARIE GOVAN, JENNIFER MARIE ST. JOHN, WILLIAM HITE, STEPHEN MCNEW, RACHEL KOPKE, and CASSANDRA LYNN BOX,

Defendants.
_______________________________________/

**ORDER DENYING DEFENDANTS' MOTION TO COMPEL INDEPENDENT MEDICAL EXAMINATION (ECF No. 57) AND STRIKING REPLY BRIEF (ECF No. 61)**

The parties in this matter agree that the minor plaintiffs, L.B. and J.H., who are now approximately and respectively 16 and 15 years old (ECF No. 1-2, PageID.10, ¶ 15) (hereinafter "minors"), should each undergo independent medical examinations (IMEs) in this case for neuro-psychological testing.[1] They also agree

[1] The federal Rules of Civil Procedure do not use the phrase "independent medical examination" or the IME moniker, *see* Fed. R. Civ. P. 35, but the parties do. The Court recognizes, from years of experience, that such examinations by an expert who is named or retained by one side of the adversarial divide − rather than by the Court itself − is sometimes not quite so "independent." Hence, at least some of the reasoning adopted from the *Gohl* decision, *infra*. Because of the potential for

that the parent/guardian/next-friend's (the named plaintiffs and hereinafter referred to as "adult observers") may be interviewed at the outset of the IMEs and may be present during the initial phase of the children's IME, namely, during the "clinical interview/observation" portion.

However, the two sides diverge over the question of whether the respective adult observers may attend the "testing portion" of the IMEs. This issue was put before the Court via Defendants' motion to compel an IME (ECF No. 57) and Plaintiffs' response (ECF No. 59). Defendants also filed a reply (ECF No. 61), which is **HEREBY STRICKEN** for failure to comply with E.D. Mich. LR 5.1(a)(3), which requires that the "type size of all text and footnotes must be no smaller than 10-1/2 characters per inch (non-proportional) or 14 point (proportional)." The type size in Defendants' reply appears to be neither (*e.g.*, there are 14 characters per inch), making it exceed the 7-page limit contained in E.D. Mich. LR 7.1(d)(3)(B). *See also* E.D. Mich. 7.1(d)(1)(B).[2] The Court was

---

something less than complete independence in such examinations, Fed. R. Evid. 706 provides for appointment of expert witnesses by the Court, and courts "sometimes make their own designations of examining experts to ensure an independent and impartial evaluation of the examinee's condition." 7 *Moore's Federal Practice – Civil*, § 35.07.

[2] There are other problems with Defendants' submissions, of which they are **DIRECTED** to make note. Defendants' opening brief (ECF No. 57) was not submitted in conformity with Electronic Filing Policy and Procedure R19(b), which requires exhibits to be specifically identified on the docket. Even if they had been so identified, their exhibits were basically a document dump, most or all of which

further advised as to the fault lines of this particular discovery dispute at a June 9, 2026 status conference, at which it learned from Plaintiffs' counsel that while the minors attended school without the adult observers, they are never supposed to be left alone and have never been tested or left alone with an examiner.

Defendants have presented the Court with a copy of a proposed order regarding the parameters and procedures for the IME and clarified in their motion that the only dispute concerns section 2(e) of that order, through which Defendants propose to have the adult observers excluded from the "testing portion" of the IME. By comparison, Plaintiffs believe that the presence of the adult observers is both preferable and necessary.

The Court has broad discretion under Rule 35 and "must still balance the right of the party to be examined to avoid personal invasion against the moving party's right to a fair trial." 7 *Moore's Federal Practice—Civil*, § 35.05 (citing *Curtis v. Express, Inc.*, 868 F. Supp. 467, 468 (N.D.N.Y. 1994) (court balanced plaintiff's right to avoid personal invasion of a mental examination against defendant's right to fair trial in denying motion for mental examination)). Having

---

required the Court to sort through an exorbitant number of pages to pinpoint anything to which Defendants referred, *e.g.*, referring the Court to "Exhibit 4" in support of their arguments and expecting the Court to paw through 165-pages for the specific evidence to which they refer. They also mislabeled their Exhibit 5 (ECF No. 57-6, one of the only exhibits for which they gave a description in CM-ECF)), another 179-page exhibit, as an "Index of Exhibits," which it clearly is not.

considered and weighed these competing interests, the Court agrees with the plaintiffs and, under the circumstances, finds that there is "special need" or "good reason," *Sultan v. Roush Indus. Inc.,* No. 08-11002, 2008 WL 5188818, at *2 (E.D. Mich. Dec. 10, 2008) (and citations therein), to justify the presence of the proposed adult observers (likely Plaintiffs' respective mothers), particularly in light of the examinees' ages and autism diagnoses. *See Gohl v. Livonia Pub. Sch.,* No. 12-15199, 2015 U.S. Dist. LEXIS 40081, at *14-19 (E.D. Mich. Mar. 15, 2015) (Goldsmith, J.). The Court cautions Plaintiffs' counsel that the adult observers will be there to simply observe, and that they may not "interfere with [the] examination [or integrity of the process] or otherwise act inappropriately," as any such interference or behavior would "run the risk of significant sanctions, including the 'risk of being assessed costs for a failed examination.'" *Gohl,* at *16 (quoting *Ardt ex. rel. Parker v. Allstate Ins. Co*., No. 09-14247, 2011 U.S. Dist. LEXIS 19563, at *2 (E.D. Mich. Feb. 28, 2011)). To the extent the examiner requests either adult observer's help encouraging the child to participate in the examination, they may engage in that limited manner. The Court agrees with Plaintiffs, as observed in *Gohl*, 2015 WL 1469749 at *3, that:

> First, parents are understandably reluctant to leave a minor child alone with an examiner hired by an adversary who does not necessarily have the child's welfare as the examiner's paramount interest. *Id*. Second, unlike a competent examinee, an incompetent child may be unable to rebut the examiner's testimony about what occurred during the examination, leaving

> the record incomplete on issues such as suggestiveness, bias, or other taint. *Id*.

(ECF No. 59, PageID.1219.) And, notably, in *Gohl* "[t]he proposed examinations were to be performed by the same examiner retained here, Dr. Jennifer Huffman." (*Id*. (citing *Gohl,* 2015 WL 1469749 at *1).)

In ruling as to the need for an adult observer, the Court is particularly persuaded by the disability of each child. Minor L.B. has severe autism and behavioral issues, is non-verbal, requires constant monitoring, and requires assistance with basic tasks. (ECF No. 59-1, PageID.1230-1231.) Because of these, his mother had to be present during testing by Plaintiffs' psychological expert, and the child was "not directly testable using standard evaluation techniques." (*Id*., PageID.1231, 1234, 1239.) Similarly Minor J.H. suffers from Autism Spectrum Disorder, "is non-verbal and … is quite restless[,]" "makes no eye contact[,]" would only interact with the Plaintiffs' psychological expert "on a limited basis," and would "cover his eyes or cover his ears and bury his face in his mother's lap" during examination. (ECF No. 59-2, PageID.1224, 1246.) Moreover, both children have been observed by mental health professionals to become visibly distressed when school or seclusion (topics central to this case) were discussed. (ECF No. 59-1, PageID.1237-1238; ECF No. 59-2, PageID.1246.)

In light of these considerations, the Court finds it appropriate for an adult observer to attend each IME and directs the parties to re-submit for entry over the

Undersigned's signature (via the CM-ECF Utilities function) orders (signed "approved as to form only") regarding each IME that utilize the language that Defendants previously proposed, except that Section 2(e) should read:

> One parent or legal guardian may be physically present for the entirety of each child's evaluation, including testing, solely as a third-party assistant for communication, regulation, comfort, and safety. The parent [or legal guardian] will not coach, prompt, answer for the child, restate questions, object, interfere, record, or disclose testing materials. If the parent [or legal guardian] interferes, the examination may be suspended and the issue presented to the Court. If Dr. Huffman believes the parent's [or legal guardian's] presence affects interpretation of any test data, she may document that in her report and testify accordingly.

(*See* ECF No. 59, PageID.1210.) Pursuant to Fed. R. Civ. P. 35(a)(2)(B), the parties should agree upon and specify in the new proposed orders the time and place of each examination.

It is **SO ORDERED**.[3]



Anthony Patti
United States Magistrate Judge

Dated: August 21, 2026

[3] The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).